IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRUCE GAVURNIK,**  Plaintiff,  *v.*  **VANTAGE LABS, LLC, et al.,**  Defendants. | **CIVIL ACTION**  **NO. 19-5537-KSM** |

## MEMORANDUM

**MARSTON, J.**  October 30, 2020

Plaintiff Bruce Gavurnik filed this action against Defendants Vantage Labs, LLC and Vantage Learning USA, LLC, alleging that the companies retaliated against him by not hiring him, first after learning that he had filed suit against one of his former employers and second, after he filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 20.) Defendants moved to dismiss and for a more definite statement, which we granted in part and denied in part. (Doc. No. 18.)

After Gavurnik amended his complaint, Defendants answered (*see* Doc. Nos. 21, 22, 31), and Vantage Labs asserted a counterclaim for fraudulent inducement, based on allegedly false representations Gavurnik made during the interview and application process (Doc. No. 21). Gavurnik then moved to dismiss the counterclaim, arguing that Vantage Labs has failed to satisfy the heightened pleading standard that applies to fraud claims and that Vantage Labs's claim is barred by the statute of limitations. (Doc. No. 23.) Vantage Labs opposes the motion. (Doc. No. 29.)

For the reasons discussed below, we grant Gavurnik's motion.

### I.     *Factual Background and Procedural History*

In or around March 20, 2017, after locating Gavurnik's resume online, Ashley Seconda, a Vantage Labs employee, reached out to Gavurnik to see if he was interested in applying for a maintenance position with Defendants. (Doc. No. 20 at ¶ 8.)  During that conversation, Seconda conducted a preliminary interview of Gavurnik. (*Id.*)  Afterwards, Seconda scheduled a follow-up interview for March 22, 2017. (*Id.* at ¶ 11.)  Gavurnik completed a Wonderlic Assessment and a written job application before the interview. (*Id.* at ¶¶ 12–13.)  On March 22, Kerry Murphy and Linda Knoblauch, two Vantage Labs employees, interviewed Gavurnik. (*Id.* at ¶ 16.)

CEO Peter Murphy then conducted a third interview on March 24, 2017, which lasted approximately two hours. (*Id.* at ¶¶ 20–21.)  During the interview, Murphy questioned Gavurnik about his pending lawsuit against a former employer for age and disability discrimination. (*Id.* at ¶ 22.)  Murphy asked Gavurnik "Why did you do it?" and "Would you do it again?" (*Id.* at ¶ 24.)  Murphy also asked Gavurnik "if there were any other lawsuits" and "told Gavurnik that he will interview someone as long as it takes until he finds the wrong or the bad." (*Id.* at ¶ 25.)

Five days later, on March 29, 2017, Gavurnik reached out to Seconda to inquire about the status of his application, and he received no response. (*Id.* at ¶¶ 27–28.)  On May 10, 2017, Gavurnik filed a Charge of Discrimination against Defendants, alleging that Defendants retaliated against him because of his lawsuit against a former employer for age and disability discrimination. (*Id.* at ¶ 29.)  When Defendants responded to the Charge, they claimed that they had still been considering Gavurnik for the position until they received a copy of the Charge. (*Id.* at ¶ 30.)  Gavurnik then filed a second Charge of Discrimination against Defendants, alleging Defendants retaliated against him for filing the first Charge. (*Id.* at ¶ 31.)

Gavurnik subsequently initiated this lawsuit, asserting retaliation claims, under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Rights Act ("PHRA").

After this Court issued a ruling on Defendants' Motion to Dismiss (Doc. No. 18), Vantage Labs filed an Answer and Counterclaim (Doc. No. 21). Vantage Labs's counterclaim asserts fraud in the inducement, alleging that during Gavurnik's interviews with Vantage Labs employees (including CEO Peter Murphy) and in the documents he submitted as part of the application process, Gavurnik "made factual assertions regarding his past job performance and background that were false" that Vantage Labs then relied upon. (*Id.* at pp. 8–9.) Gavurnik then filed a motion to dismiss Vantage Labs's counterclaim. (Doc. No. 23.)

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Fraud claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Reid v. Heartland Payment Sys.*, Civil Action No. 17-4399, 2018 WL 488055, at *4–5 (E.D. Pa. Jan. 19, 2018) (applying Rule 9(b) to fraud in the inducement claim). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a party bringing a fraud claim "must state the circumstances

of the alleged fraud with sufficient particularity to place the [opposing party] on notice of the precise misconduct with which it is charged." *Frederico*, 507 F.3d at 200 (quotation marks and citation omitted).

Accordingly, the party asserting a fraud claim "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* In other words, "Rule 9(b) requires, at a minimum, that [the party] support their allegations of . . . fraud with . . . the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Properties, Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted).

### III. Discussion

We first address Gavurnik's contention that Vantage Labs has failed to plead its fraud in the inducement claim with sufficient particularity to satisfy Rule 9(b)'s stringent standard.

In Pennsylvania, to establish fraud in the inducement, the party must show:  (1) a representation; (2) material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury. *Reid*, 2018 WL 4880055, at *4 (citation omitted); *Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 199 (E.D. Pa. 2015).

Here, Vantage Labs has not satisfied Rule 9(b)'s heightened pleading standard for its fraud in the inducement counterclaim.  Vantage Labs pleads that during the application process, Gavurnik "made factual assertions regarding his past job performance and background in general that were false," which were material to Vantage Labs's decision to not interview other candidates.  (Doc. No. 21 at ¶¶ 49–50.)  In addition, Vantage Labs pleads that Gavurnik "made

4

[those false representations] with the intent of misleading" Vantage Labs into relying on them, resulting in injury (i.e., "lost opportunity to meet with viable candidates, loss [sic] time and expense interviewing [Gavurnik]"). (*Id.* at ¶¶ 52–54.)

But these are conclusory allegations that simply regurgitate the elements of a fraudulent inducement claim. Vantage Labs does not provide *any* specificity as to the substance of these allegedly false, factual assertions. Viewing the facts in the light most favorable to Vantage Labs, Vantage Labs has provided answers to the "who," "where," "when," and "how" questions,[1] but it has not shed any light on "what" false representations Gavurnik allegedly made. Because Vantage Labs failed to plead its fraudulent inducement counterclaim with sufficient particularity, we grant Gavurnik's motion to dismiss. *See, e.g.*, *Frederico*, 507 F.3d at 200–01 (holding that the plaintiff "does not state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations," where the plaintiff only made "generic references" and did not disclose "the substance of the misrepresentation"); *Reid*, 2018 WL 488055, at *4–5 (granting motion to dismiss fraud in the inducement claim, where plaintiff did not clearly allege "what specific misrepresentations were made with falsity of the facts"); *cf. Kunkle v. Cmty. Health Sys. Prof'l Servs. Corp.*, Civ. No. 09-0208, 2009 WL 10737883, at *1 (E.D. Pa. Apr. 22, 2009) (concluding that the plaintiff satisfied Rule 9(b) where the plaintiff "provide[d] names, a general time-frame, and the substance of the allegedly fraudulent statements").

Second, we address Gavurnik's statute of limitations argument. Gavurnik contends that Vantage Labs's counterclaim is barred by the two-year statute of limitations for fraud in the inducement claims (*see* Doc. No. 23 at p. 8 (citing Pa. Cons. Stat. § 5524(7))) because the

---

[1] Gavurnik allegedly made false representations to CEO Peter Murphy and others (the "who") in his application paperwork and interviews (the "how" and "where") in March 2017 (the "when").

allegedly false representations took place in March 2017 and Vantage Labs did not file its counterclaim until July 28, 2020 (Doc. No. 21), over three years later.

In response, Vantage Labs argues that the counterclaim is timely brought (even in light of the two-year statute of limitations period) because Gavurnik did not file his complaint until the eve of his own limitations period, Vantage Labs initially filed a motion to dismiss and a motion for a more definite statement in lieu of an Answer, and Vantage Labs timely asserted its counterclaim in its Answer after the Court ruled on its pending motions in June 2020.  (Doc. No. 29 at pp. 6–8.)

In support of its argument, Vantage Labs cites to *United States v. Shainfine*, 151 F. Supp. 586 (E.D. Pa. 1957).  There, the plaintiff United States brought a breach of contract action over six years after the alleged breach occurred, seeking $379.74.  *Id.* at 586.  The Court held that the defendant should not be precluded from asserting a counterclaim for a return of a $408 deposit based on the statute of limitations, given that the counterclaim arose from the same incident.  *Id.* at 586–87.  However, as Gavurnik rightly observes, Vantage Labs does not cite to any case involving private parties that has a similar holding, and *Shainfine* is also distinguishable because Gavurnik had filed two charges with the EEOC in the spring of 2017, so Vantage Labs was on notice that Gavurnik intended to pursue retaliation claims long before its own statute of limitations period expired.  (*See* Doc. No. 33 at p. 3.)

Vantage Labs does not address whether it seeks recoupment or a set-off.  "A recoupment concerns solely the claim asserted by the plaintiff and no affirmative relief may be obtained by the defendant, while a set-off will permit an affirmative judgment for defendant." *Stulz v. Boswell*, 453 A.2d 1006, 1008–09 (Pa. Super. Ct. 1982) (citations omitted) ("Recoupment is a common law remedy designed to avoid the harsh results of the statute of limitations.  Thus . . . a

6

court will allow a defendant to reduce the award obtained by a plaintiff if the defendant has a counterclaim that relates to the particular transaction that is the subject of the litigation commenced by plaintiff, notwithstanding the fact that the defendant failed to assert this counterclaim before the statute of limitations had run.").

We find that this case is more akin to a set-off than a recoupment because Vantage Labs's fraudulent inducement claim does not solely concern Gavurnik's retaliation claims. (To be sure, Vantage Labs's and Gavurnik's claims both arise out of a series of interviews that allegedly went wrong, but that is where the similarities end.) Rather, Vantage Labs brings a new cause of action in its counterclaim and seeks affirmative relief. (*See* Doc. No. 21 at p. 9 ("Wherefore, Defendant Vantage Labs, LLC, hereby demands judgment against the Plaintiff/Counterclaim Defendant Gavurnik for compensatory damages and punitive damages in an amount in excess of ($75,000) . . . for an award of punitive damages[.]").) Nor was Vantage Labs somehow prevented from filing a complaint asserting its fraud in the inducement claim before the two-year statute of limitations had run.

Therefore, we conclude that Vantage Labs's fraudulent inducement claim is time-barred. *See Anchor Motor Freight, Inc. v. Ranger Nationwide*, 694 F. Supp. 1198, 1199 (W.D. Pa. 1988) ("[D]efendant here has asserted a new cause of action in its counterclaim . . . Defendant seeks an affirmative judgment on the Counterclaim in the amount of damages sustained as a result of plaintiff's alleged negligence . . . [S]uch a claim is subject to the 2 year limitations period and is therefore barred."); *Harmer v. Hulsey*, 467 A.2d 867, 869 (Pa. Super. Ct. 1983) ("Appellant's argument that his action was hindered and prejudiced because appellee chose to file his complaint late in the two-year period is patently meritless. Appellant was entitled to the same two-year period as appellee in which to bring an action for damages for his own injuries arising

from the incident . . . A cause of action raised as a counterclaim may be potentially as stale as a cause of action asserted in an original complaints [sic].").

Finally, Plaintiff argues in his reply brief that Vantage Labs's response brief was untimely. (Doc. No. 33.) Plaintiff is mistaken. During the August 20, 2020 telephonic status conference with the Court, counsel for Vantage Labs represented that it would be filing a response by August 31, 2020, and the Court indicated that this was permissible. Vantage Labs then filed its response on August 28, 2020.

### IV.   *Conclusion*

For the foregoing reasons, we grant Gavurnik's motion, and we dismiss Vantage Labs's fraudulent inducement counterclaim with prejudice.

An appropriate order follows.