**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRUCE GAVURNIK**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-5537-KSM** |
| **VANTAGE LABS, LLC, et al.,** | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                          **March 8, 2022**

Plaintiff Bruce Gavurnik brings this lawsuit against Defendant Vantage Labs, LLC, alleging that Vantage retaliated against him by failing to hire him because he sued his former employer for violations of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment ("ADEA") and then again because he filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Vantage.  (Doc. No. 20.)  Gavurnik and Vantage have both filed motions *in limine*.  (Doc. Nos. 65, 66, 68, 69.)  For the reasons discussed below, the Court grants Gavurnik's motions *in limine* and grants in part and denies in part Vantage's motions *in limine*.  Because we write only for the parties, we do not include a detailed recitation of the facts.  A more thorough recitation of the facts is included in the Court's Opinion on Vantage's motion for summary judgment.  (*See* Doc. No. 80.)

I.       **Gavurnik's Motions *in Limine***

Gavurnik has filed three motions *in limine*, in which he seeks to preclude Defendants from introducing evidence of:  the EEOC Determination on his 2017 Charge of Discrimination,

the outcome of the lawsuit he filed against his former employer, Home Properties, and his criminal history.  (Doc. Nos. 66, 67, 79.)  Vantage opposes the motions.  (Doc. Nos. 73, 74, 84.) We address each in turn.

### A. *Motion to Exclude the EEOC Determination*

Gavurnik seeks to preclude Defendants from introducing evidence of the EEOC Dismissal and Notice of Rights (the "EEOC Determination") issued in response to Charge No. 530-2017-02582 (the "2017 Charge").[1]  (Doc. No. 67.)  The EEOC Determination states:

> The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

(Doc. No. 67-1.)  Gavurnik asserts that the EEOC Determination is not relevant and even if it were relevant, it is unfairly prejudicial to him because "the jury may conclude [from it] that this case was investigated by a governmental agency and that said agency sided with the defense." (Doc. No. 67 at 4.)  Vantage opposes the motion, arguing that because Gavurnik intends on introducing the 2017 Charge, it should be able to use the Determination; otherwise, "the full picture" is "hid[den] from the jury."  (Doc. No. 73.)  Vantage is mistaken.

"Relevant evidence is anything having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Burlington v. News Corp.*, Civil Action No. 09-1908, 2015 WL 3439149, at *9 (E.D. Pa. May 27, 2015) (citing Fed. R. Evid. 401).  Some courts in this Circuit have held that EEOC determinations are relevant in employment discrimination cases.  *See, e.g.*,

---

[1] In this Charge, Gavurnik alleged that Vantage's conduct "including . . . failing to hire me after questioning me about a pending ADEA and ADA lawsuit against a former employer constitute[d] unlawful retaliation in violation of the [ADA and ADEA]."  (Doc. No. 63-21.)

*El v. Se. Pa. Transp. Auth.*, 479 F.3d 332, 248 n.19 (3d Cir. 2007) ("EEOC determinations are relevant substantive evidence in Title VII[2] cases."); *Burlington*, 2015 WL 3439149, at *9 (same). However, other courts analyzing similar language as that present here—namely, where the EEOC states that it is "unable to conclude that the information obtained [in its investigation] establishes violations" but "does not certify that the respondent is in compliance with the statutes"—found the EEOC determination irrelevant.  *See Berry v. Georgetown Inn, Ltd.*, No. 2:08-cv-0205, 2010 WL 608076, at *1–2 (W.D. Pa. Feb. 18, 2010) ("The Court fails to see how that which is essentially a non-decision on the part of the EEOC demonstrates any tendency to make the existence of a fact of consequence to the determination of this action more or less probable than it would be without the evidence."); *Kirby v. J.C. Penney Corp., Inc.*, No. 2:08-cv-1088, 2009 WL 3572494, at *2 (W.D. Pa. Oct. 26, 2009) (same).

Even assuming *arguendo* that the EEOC Determination is relevant under Rule 401, the Court cannot conclude that it survives a Rule 403 analysis.  A "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "[T]he decision of whether or not an EEOC Letter of Determination is more probative than prejudicial is within the discretion of the trial court, and to be determined on a case-by-case basis."  *Martinelli v. Penn Millers Ins. Co.*, 269 F. App'x 226, 229 (3d Cir. 2008) (quoting *Coleman v. Home Depot*, 306 F.3d 1333, 1345 (3d Cir. 2002)); *see also id.* at 229 ("[T]he District Court concluded that the letter's claim to be a 'determination as to the merits,' coupled with the fact that it originated from an authoritative government agency,

---

[2] "Retaliation claims under the ADEA, ADA, and PHRA are analyzed in the same manner as retaliation claims under Title VII."  *Sterling v. McKesson Automation, Inc.*, No. 02:04cv1470, 2006 WL 2702203, at *9 (W.D. Pa. Sept. 26, 2006) (collecting cases).

could confuse and mislead the jury and unfairly prejudice [the defendant].  The District Court also concluded that the letter would provoke needless presentation of cumulative evidence.  Because these concerns were entirely consistent with Rule 403 . . . , we hold that the decision to exclude the EEOC letter was well within the discretion of the learned trial judge").

*Burlington v. News Corp.* is instructive.  There, the EEOC issued an identical determination.  *See* 2015 WL 3439149, at *9.  The court concluded that the EEOC determination had "very little probative value," noting that it "represent[ed] merely conclusory statements, such as 'based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.'"  *Id.*  The court continued,

> It contains no factual basis for arriving at this conclusion, and appears to be nothing more than an EEOC form with boilerplate language.  Moreover, the EEOC Determination appears to be nothing more than a non-decision.  It simply advises that it is 'unable to conclude' whether a violation occurred and 'does not certify that the respondent is in compliance.'  This indecisive language has no probative value.

*Id.*  The court also concluded that the prejudicial effect of the EEOC determination was "high," particularly in light of "the fact that it originated from an authoritative government agency, [which] ha[d] the potential to confuse and mislead the jury."  *Id.* at *10.  The court also reasoned that allowing the defendants to introduce the EEOC determination would necessitate "the needless presentation of cumulative evidence."  *Id.*  Accordingly, the court granted the motion *in limine* and excluded the EEOC determination.  *Id.*; *see also Berry*, 2010 WL 608076, at *2 ("Even assuming, *arguendo*, the Dismissal and Notice of Rights had marginal probative value, any such value would be considerably outweighed by a number of concerns.  The document originates from an authoritative governmental agency, and speaks in terms of an undefined adjudicative process culminating in a conclusory 'determination' that the evidence presented to the EEOC did not establish a violation.  A jury could easily confuse the meaning of the

document as suggestive of the jury's ultimate legal conclusion.  Further, in order for any kind of proper context to be provided for the relevance of this determination itself would require the needless presentation of cumulative evidence[.]"); *Kirby*, 2009 WL 3572494, at *2 (same).

So too here.  The Court concludes that the EEOC Determination has very little, if any, probative value.  Like the determination in *Burlington*, the EEOC Determination here "appears to be nothing more than a non-decision" and merely consists of boilerplate language.  (Doc. No. 67-1 (stating that the "EEOC is unable to conclude that the information obtained establishes violations of the statutes" but, at the same time, "not certify[ing] that [Vantage] is in compliance with the statutes").)  *See Burlington*, 2015 WL 3439149, at *9.  Moreover, the prejudicial effect of the EEOC Determination is high.  As in *Burlington*, *Berry*, and *Kirby*, the EEOC Determination could cause the jury to confuse the issues.  The fact that the determination was issued by an authoritative governmental agency could suggest to the jurors the ultimate legal conclusion they should reach, notwithstanding the fact that it does not state what facts it relied on in rendering its determination or what the investigation encompassed.  In addition, allowing Vantage to introduce the EEOC Determination would result in the presentation of needlessly culminative evidence.

For these reasons, the Court grants Gavurnik's motion to exclude evidence of the EEOC Determination.  *See Martinelli*, 269 F. App'x at 229 ("[T]he District Court concluded that the letter's claim to be a 'determination as to the merits,' coupled with the fact that it originated from an authoritative government agency, could confuse and mislead the jury and unfairly prejudice [the defendant].  The District Court also concluded that the letter would provoke needless presentation of cumulative evidence.  Because these concerns were entirely consistent with Rule 403 . . . , we hold that the decision to exclude the EEOC letter was well within the discretion of

the learned trial judge").  And as to Vantage's all-or-nothing argument—i.e., that the jury should

have the full picture as to Gavurnik's 2017 Charge or no information at all—the Court notes that

to the extent that the Vantage agrees to stipulate that the filing of the 2017 Charge constituted

protected activity, there is no need for the Charge to be introduced into evidence.[3]

### B.        Motion to Exclude the Outcome of the Home Properties Case

Next, Gavurnik seeks to exclude the outcome of the lawsuit he initiated against his

former employer, Home Properties.[4]  (Doc. No. 66.)  Gavurnik argues that the outcome of the

suit is not relevant under Rule 401 and even if it were relevant, it would unfairly prejudice him

"as the jury may wrongly conclude that [he] cannot succeed on his claims against [Vantage]

because he was unsuccessful in the Home Properties matter."  (*Id.* at 4.)  Vantage opposes the

motion, contending, again, that Gavurnik seeks to "hide from the jury the full picture:  that

judgment had been entered on those claims, the timing of such judgment, and other probative

facts relating to the Home Properties matter."  (Doc. No. 74 at 3; *see also id.* at 4 ("The

document that the Plaintiff seeks to preclude is the entry of the Summary Judgment on January 3,

2017; over two months prior to the Plaintiff's interview with the Defendants.  By this date, the

judgment of dismissal had been entered.  The jury should be presented with all the evidence prior

---

[3] The Court directs the parties to meet and confer regarding stipulations prior to the final pre-trial conference.  Based on the parties' summary judgment arguments, the parties should be able to stipulate that both the EEOC filing in May 2017 and the prior Home Properties lawsuit, discussed *infra* Section I.B, constitute protected activity.  Such a stipulation would eliminate the need to introduce further evidence of either the EEOC filing or the lawsuit.

[4] In that case, on January 3, 2017, the district court granted the employer's summary judgment motion on Gavurnik's ADEA and ADA discrimination claims and his ADA retaliation claim.  *See Gavurnik v. Home Properties, L.P.*, 227 F. Supp. 3d 410 (E.D. Pa. 2017), *aff'd*, 712 F. App'x 170 (3d Cir. 2017).  Specifically, the court found that Gavurnik had not established a prima facie case for ADA retaliation because he could not show a causal connection between his request for an accommodation and his termination, that his ADA discrimination claim must fail because he was not disabled, and that his ADEA discrimination claim must be dismissed because he had not shown that the defendant's stated reason for firing him was pretextual.  *See generally id.*  The Third Circuit affirmed on October 25, 2017.

to making any determination at trial.").)

      As noted above, *see supra* Section I.A, evidence is relevant if it has any tendency to make a fact more or less probable and the fact is of consequence in determining the action.  Fed. R. Evid. 401.  Here, the Home Properties lawsuit is relevant because Gavurnik alleges that Vantage retaliated against him by failing to hire him *because of that lawsuit*.  The timing of the district court's summary judgment decision is also relevant because it was issued shortly before Gavurnik's March 2017 interview with Peter Murphy, the founder of Vantage.  There is also at least some evidence in the record that Mr. Murphy and Gavurnik discussed the outcome of the lawsuit during the interview.  (*See* Peter Murphy Dep. at 69:20–22 ("I do recall that [Gavurnik] said that it was a waste of time and that he would never do it again and that he was talked into doing it."); Doc. No. 63-20 (Mr. Murphy's handwritten notes from the interview that say "- Waste of Time, - Coerced, - Never Do It Again").)

      Although neither party addresses it in their briefs, introducing evidence of Gavurnik's prior lawsuit also implicates Rule 404.  Under Rule 404(a), "evidence of a person's character . . . is not admissible to prove that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(a)(1); *see also Chopourian v. Catholic Healthcare W.*, Civ. No. S-09-2972 KJM KJN, 2011 WL 6396500, at *3 (C.D. Cal. Dec. 20, 2011) ("Generally, evidence of prior lawsuits is excluded under Rule 404(a) because it shows a propensity to sue.").  Rule 404(b) provides that "evidence of any . . . wrong, or act is inadmissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the[ir] character."  Fed. R. Evid. 404(b)(1); *see also Hickey v. Meyers*, No. 09-CV-01307 (MAD/DEP), 2013 WL 2418252, at *4 (N.D.N.Y. June 3, 2013) ("It is well-settled that it is improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a

plaintiff is a 'chronic litigant.'").  Character evidence, however, is admissible "for other purposes, such as proving motive, opportunity, [or] intent."  Fed. R. Evid. 404(b)(2).

Here, Vantage does not explicitly state why it wants to introduce the outcome of the Home Properties lawsuit, other than its repeated assertion that the jury must have all the facts. However, by asserting that the jury needs to know the outcome to understand "the full picture" and not pointing to a legitimate reason for introducing evidence that Gavurnik filed a suit that failed on the merits, the Court finds that Vantage is "essentially attempting to suggest that" because Gavurnik instituted a prior suit with similar claims that failed on the merits, "his current suit is more likely to be frivolous," which is impermissible.  *See Davies ex rel. Davies v. Lackawanna Count*y, 2018 WL 924205, at *6 (M.D. Pa. Feb. 24, 2018) ("Mr. Davies' employment with the Capitol Police [the prior suit] has no bearing on the events that happened during his employment with Lackawanna County [the defendant].  The Court finds that Defendants are essentially attempting to suggest that because Mr. Davies instituted a prior suit with similar claims, his current suit is more likely to be frivolous.  Such 'propensity' evidence would be barred under [Rule] 404.").[5]

In any event, even assuming *arguendo* that the outcome of the lawsuit is relevant, the Court finds that the probative value is substantially outweighed by a danger of unfair prejudice and confusing the issues and therefore should be excluded under Rule 403.  *See* Fed. R. Evid. 403.  For example, the jury may conclude from the fact that Gavurnik lost his prior employment discrimination lawsuit against Home Properties that his current employment discrimination

---

[5] At oral argument on Vantage's summary judgment motion, Vantage suggested that the prior suit would be used to show Gavurnik's *modus operandi*; however, in this circumstance, that would still be used for the purpose to show that Gavurnik is a chronic litigant, which, for the reasons discussed above, is impermissible.

lawsuit against Vantage is also meritless.  Because the ADA and ADEA claims in the instant suit

are based on Gavurnik's ADA and ADEA claims against Home Properties[6] and those ADA and

ADEA claims were unsuccessful, a jury could confuse the issues and reach the conclusion that

Gavurnik's ADA and ADEA claims cannot survive here either.

The case on which Vantage relies, *Karlo v. Pittsburgh Glass Works, LLC*, is unavailing.

2:10-cv-1283, 2016 WL 69651 (W.D. Pa. Jan. 6, 2016).  In *Karlo*, the court granted the

defendant's summary judgment motion on the then-named plaintiffs' disparate treatment and

disparate impact claims but denied the summary judgment motion as to two of the plaintiffs'

retaliation claims.  *Id.* at *1.  Before trial on the remaining retaliation claims, the two remaining

plaintiffs sought to exclude evidence of the court's order decertifying their conditionally certified

collective action and the court's judgment on their ADEA disparate impact and disparate

treatment claims.  *Id.* at *10.  The court denied the plaintiffs' motion *in limine*, noting that

because "they seek to introduce testimony and evidence regarding the underlying facts of their

discrimination claims as probative of their good faith belief and [the defendant's] discriminatory

animus," they cannot then "hide from the jury the full picture:  that judgment has been entered on

those claims."  *Id.*  But *Karlo* is distinguishable.  The plaintiffs in *Karlo* were attempting to

introduce evidence to show that the exact same employer—Pittsburgh Glass Works—acted with

a discriminatory animus when that theory of the case had already been rejected by the court in

---

[6] Gavurnik argues Vantage retaliated against him, in violation of the ADA and ADEA, because he filed
an ADA and ADEA lawsuit against Home Properties.  *See also* 42 U.S.C. § 12203(a) (ADA's retaliation
provision, which prohibits discrimination "against any individual because such individual has opposed
any act or practice made unlawful by [the ADA] or because such individual made a charge, testified,
assisted or participated in any manner in . . . [a] proceeding . . . under [the ADA]"); 29 U.S.C. § 623(d)
(ADEA's retaliation provision, which makes it unlawful for employers to "discriminate against any of
[its] employees or applicants for employment . . . because such individual . . . has opposed any practice
made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or litigation under [the ADEA].").

that very same litigation (when it entered judgment on the disparate impact and disparate treatment claims).  That is a far cry from this case, where Gavurnik will introduce evidence that he brought a lawsuit against Home Properties, not Vantage Labs, which involved different claims, legal theories, and evidence and was decided in a separate litigation.

In sum, the Court finds that the parties may introduce evidence that Gavurnik sued his former employer, Home Properties, and that the case ended on January 3, 2017.[7]  In addition, the Court finds that Gavurnik's filing the ADA and ADEA lawsuit against Home Properties constitutes protected activity.[8]  However, Vantage may not introduce either the district court's summary judgment opinion or the Third Circuit's opinion affirming that decision, nor may it elicit questions that explicitly evoke the outcome of the case (i.e., that Gavurnik lost). For these reasons, the Court grants Gavurnik's motion *in limine*.

### C.    Motion to Exclude Criminal History

Last, Gavurnik moves to exclude evidence of his prior criminal history, including underage drinking that occurred decades ago, failure to pay child support in the mid-1980s, and a harassment summary offense that occurred in 2020,[9] after the events at issue in this case occurred.  (Doc. No. 79.)  Gavurnik argues that none of these offenses is relevant and that allowing Vantage to introduce evidence of them is unduly prejudicial.  (*Id.*)  Vantage counters that the entire trial hinges on Gavurnik's credibility and therefore his criminal history should be

---

[7] *See supra* n.3.

[8] Based on the parties' summary judgment arguments, it appears that the parties should be able to stipulate that both the prior Home Properties lawsuit and the EEOC filing in May 2017 constitute protected activity, which would eliminate the need to introduce further evidence of the suit.

[9] The state court docket shows that Gavurnik was charged with a violation 18 Pa. Stat. Const. Ann. § 2709(a)(1) (*see* Doc. No. 79-2), which constitutes a summary offense, *see* § 2709(c)(1) ("[A]n offense under subsection (a)(1) . . . shall constitute a summary offense").  He pled guilty to the offense on August 25, 2020.  (Doc. No. 79-2.)

admitted, since those acts go toward his credibility.  (Doc. No. 84.)

Rule 609 outlines when and how a party may introduce evidence of a witness's prior criminal conviction.  *See* Fed. R. Evid. 609(a) ("The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction.").  Under Rule 609(a)(1), a conviction for a crime punishable by more than one year imprisonment must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant.  Fed. R. Evid. 609(a)(1).  And Rule 609(a)(2) dictates that the court must admit evidence of any conviction, less than 10 years old, where "the elements of the crime required proving or the witness admitting—a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  But "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," evidence of the conviction is admissible only when the court finds that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(b)(1); *see also United States v. Jessamy*, 464 F. Supp. 3d 671, 674 (M.D. Pa. 2020) ("[T]he Rule 403 balancing is reversed.  Whereas under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, for convictions over ten years old, the probative value of the conviction must substantially outweigh the prejudicial effect.").  Under this standard, convictions that are "more than ten years old are presumptively excluded," *see United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014), and "are only to be admitted in exceptional circumstances," *Jessamy*, 464 F. Supp. 3d at 674.

Here, none of Gavurnik's offenses required proof of an act of dishonesty or a false statement and therefore do not fall within the ambit of Rule 609(a)(2).[10]  *See* 18 Pa. Cons. Stat.

---

[10] Vantage's counsel seems to confuse a crime of dishonesty under Rule 609 with the possibility that Gavurnik may not tell the truth about certain convictions (or other aspects of his past) when testifying at trial.  To the extent that counsel seeks to impeach Gavurnik at trial, the court must wait to hear the evidence in order to determine whether such impeachment is proper.  *See* Fed. R. Evid. 608(b)(1)

§ 6308(a) ("A person commits a summary offense if he, being less than 21 years of age, attempts to purchase, purchases, consumes, possesses or knowingly and intentionally transports any liquor or malt or brewed beverages."); 23 Pa. Cons. Stat. § 4354(a) ("An individual who willfully fails to comply with a support order of a court of this Commonwealth when the individual has the financial ability to comply with the support order commits an offense."); 18 Pa. Cons. Stat. Ann. § 2709(a)(1) ("A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (1) strikes shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same . . . .").

And, even if the underage drinking and failure to pay child support required proof of an act of dishonesty or false statement, they still would not be admissible because they occurred so long ago. Gavurnik is currently 67 years old (*see* Gavurnik Dep. at 13:15–16), so any underage drinking offense would have occurred at least 46 years ago, and his son is 41 (*see id.* at 13:17–20), so any delinquency in making child support payments would have occurred at least 23 years ago. Moreover, given the ages and nature of these offenses, there is little, if any, probative value, such that the probative value cannot outweigh the risk of unfair prejudice.

Further, none of the offenses are punishable by more than one year imprisonment and therefore the offenses do not fall within the scope of Rule 609(a)(1). *See* 18 Pa. Cons. Stat. § 6308(b) ("A person convicted of [underage drinking] may be sentenced to pay a fine of not more than $500 for the first violation and not more than $1,000 for the second and each subsequent violation."); 23 Pa. Cons. Stat. § 4345(a) (explaining that a person who willfully fails

---

("Expect for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness.").

to comply with child support order may be held in contempt, which shall be punishable by (1) imprisonment for a period not to exceed six months, (2) a fine not to exceed $1,500, and/or (3) probation for a period not to exceed one year); 18 Pa. Cons. Stat. Ann. § 2709(c) ("[A]n offense under subsection (a)(1) . . . shall constitute a summary offense"); *id.* at § 106(a) (stating that an offense is a summary offense "if it is so designated in this title" or "if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days"). As noted above, even if the underage drinking and child support delinquency offenses were punishable by more than one year imprisonment, they are not admissible because the probative value does not outweigh the prejudicial effect.  And even if the summary offense for harassment was punishable by more than one year imprisonment, the Court must still conduct a Rule 403 analysis and here the probative value is minimal and the risk of unfair prejudice is high, such that the prejudicial effect substantially outweighs the probative value.

Accordingly, Gavurnik's motion *in limine* is granted.

## II.     Vantage's Motions *in Limine*

Vantage has filed two motions *in limine*, seeking to preclude Gavurnik from introducing evidence of an email between Vantage's former in-house counsel, Ken LaFiandra, and Gavurnik's counsel, and evidence of a settlement between Vantage and a former employee in a separate lawsuit (the "*Zinman* case").  (Doc. Nos. 68, 69.)  Gavurnik opposes the motions.  (Doc. Nos. 70, 71.)

### A.     Motion to Exclude Ken LaFiandra Email

Vantage seeks to exclude an email that its former in-house counsel, Ken LaFiandra, sent to Gavurnik's counsel, arguing that it falls under the federal meditation privilege or, in the alternative, the Pennsylvania mediation privilege.  (Doc. No. 69.)  Vantage also appears to argue

that the email is hearsay.  (*See id.* at 4 ("Plaintiff seeks to use alleged hearsay admissions made by Defendant's attorney in his email relating to mediation.").)  In opposing the motion, Gavurnik relies on the factual timeline—namely, that the EEOC had cancelled the scheduled mediation and the parties had not yet rescheduled mediation and thus they were not in the midst of the mediation—to argue that the federal mediation privilege does not apply.[11]  (Doc. No. 71.)

As to the mediation privilege arguments, the Court first rejects Vantage's argument that Pennsylvania's mediation privilege, codified at 42 Pa. Cons. Stat. § 5949(a), applies.  (*See* Doc. No. 69 at 4–5 ("The court should apply Section 5949 to the instant case.").)  "Federal privilege law controls when, as here, a case in federal court involves both state and federal claims." *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469 n.4 (E.D. Pa. 2008); *see also Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) ("[W]e held that when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." (cleaned up)).

As for federal mediation privilege, Vantage does not cite—and this Court has not found—a decision in which the Third Circuit explicitly adopts the federal mediation privilege. And there is some discord as to whether such a privilege exists.  *Compare Sheldone v. Pa. Tpk. Comm'n*, 104 F. Supp. 2d 511, 512–16 (W.D. Pa. 2000) (noting that Rule 501 allows courts to create evidentiary privileges under federal common law, and concluding that the factors outlined in *Jaffee v. Redmond*, 518 U.S. 1 (1996), "counsel in favor of recognizing a federal mediation privilege") *and Chester Cty. Hosp. v. Indep. Blue Cross*, No. Civ. A. 02-2746, 2003 WL

---

[11] Gavurnik also asserts that the email is admissible because it is a statement of a party opponent and therefore falls into a hearsay exclusion under Federal Rule of Evidence 801(d)(2).  (*Id.* at 7.) Because the Court will exclude the admission of this email on other grounds, the Court does not address the parties' hearsay arguments.

25905471, at *2 (E.D. Pa. Nov. 10, 2003) (recognizing the federal mediation privilege) *with*
*Stewart Title Guar. Co. v. Owlett*, 297 F.R.D. 232, 239 n.3 (M.D. Pa. 2013) ("While some courts
have recognized a federal mediation privilege, other courts have questioned whether there is such
a privilege.") *and Sampson*, 262 F.R.D. at 476 (noting that although the *Sheldone* court and other
courts outside of this Circuit recognized a federal mediation privilege, "at least one federal
district court has questioned the existence of a federal mediation privilege"); *Molina v. Lexmark
Int'l, Inc.*, No. 08-4796, 2008 WL 4447678, at *9 (C.D. Cal. Sept. 30, 2008) ("The existence of a
federal common law mediation privilege is not nearly as well established as [the defendant]
suggests it is.  No Circuit court has ever adopted or applied such a privilege[.]").

Even assuming that federal mediation privilege exists, the Court finds that the email is
not covered by it.  On January 19, 2018, a mediator from the EEOC emailed LaFiandra and
Gavurnik's counsel to cancel the mediation in light of a pending government shutdown.  (Doc.
No. 71-1.)  The mediator advised that she would be in touch to reschedule the mediation as soon
as she could.  (*Id.*)  On January 24, the EEOC mediator reached back out to the parties, inquiring
whether they were interested in rescheduling the mediation.  (Doc. No. 71-2.)  The next day,
January 25, LaFiandra emailed Gavurnik's counsel the document currently at issue.  (Doc. No.
69-1.)  LaFiandra explained that he was "offer[ing] additional information so that [Gavurnik's
counsel] may evaluate this matter" and asked Gavurnik's counsel to advise if he had "any
additional information that would help [Vantage] evaluate the matter differently."  (*Id.* at 1.)
LaFiandra also wrote, "[L]et me know if you think a rescheduling of the mediation would be
helpful or if we should just move forward with a hearing."  (*Id.*)  LaFiandra then detailed the
testimony that Vantage's corporate recruiter, Ashley Secoda, would be able to offer and
Vantage's reasons for not hiring Gavurnik immediately, among other things.  (*See generally id.*)

The record before the Court shows that the parties were not engaging in mediation at the time that the LaFiandra email was sent—rather, the mediation had been cancelled and had not yet been rescheduled.  Nowhere in the email does LaFiandra mention mediation, other than asking whether it would be worthwhile to reschedule the mediation.  As such, the Court cannot conclude that the federal mediation privilege applies.  And none of the cases Vantage cites suggest otherwise, as they do not involve similar facts.  *See Chester Cty. Hosp.*, 2003 WL 25905471, at *7 (finding that the mediation privilege applied to five documents that were submitted to an independent mediator, "prepared for purposes of the confidential mediation," and "bore the mark 'CONFIDENTIAL: For Settlement Purposes Only'"); *Sheldone*, 104 F. Supp. 2d at 512, 517 (finding that the federal mediation privilege applied, thereby precluding discovery of the corporate deposition noticed pursuant to Federal Rule of Civil Procedure 30(b)(6) in which the plaintiffs sought to conduct an examination "regarding the mediation of the grievance filed by Roger Haas and Michael Pandolfo heard on May 21, 1999, before [the mediator]").

Notwithstanding the fact that the federal mediation privilege does not bar the introduction of the email, the Court finds that the email must be excluded under Rule 408.[12]  Rule 408 dictates that evidence of "conduct or statements made during compromise negotiations" is not admissible "either to prove or disprove the validity . . . of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a)(2).  "Rule 408 applies where there is a 'dispute' between parties, or 'at least an apparent difference of view . . . concerning the validity or amount of a claim.'"  *ECEM European Chem. Mktg. B.V. v. Purolite Co.*, 451 F. App'x 73, 77 (3d Cir. 2011) (quoting *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 525 (3d Cir. 1995)).  "A dispute need not crystallize to the point of threatened litigation; a mere

---

[12] Although neither party mentions Rule 408 in their briefs, the Court finds it applies here.

16

difference in opinion will suffice to warrant the exclusion." *Id.* (cleaned up).  "In determining whether a dispute exists, the facts of each case are critical to a district court's exercise of discretion.  Ultimately, when in doubt, the district court should err on the side of excluding compromise negotiations."  *Id.*  The Court finds that a dispute existed in January 2018, as the email indicates that there was a difference in opinion as to the merits of Gavurnik's claim and that counsel were working to resolve it.  (*See* Doc. No. 69-1.)  The fact that the parties were either going to reschedule the mediation or proceed to a hearing underscores the parties' differences in opinion.  (*See id.*)

In the alternative, even if Rule 408 did not apply, the Court concludes that the email would need to be excluded under Rule 403.[13]  The Court finds that the LaFiandra email has minimal probative value because many of the statements therein overlap with other record evidence.  In light of the deposition testimony and other documents in the record, Vantage's evidence will include testimony regarding the fact that it was still considering other candidates for the position at the time that Gavurnik filed the 2017 Charge, it interviewed three other candidates after Gavurnik, that the position was sensitive because the individual hired would have the keys to the Vantage buildings, and that Vantage hired Louis Donatucci because he was more qualified.  And, in any event, the Court finds that the risk of unfair prejudice substantially outweighs the probative value, given that it is correspondence between two attorneys and the jury may believe that it is indicative of a legal conclusion for that reason alone.

For these reasons, the Court grants Vantage's motion *in limine*.

---

[13] Again, the parties fail to discuss the Rule 403 analysis, which the Court must conduct.  *See, e.g.*, *Chisholm*, 2011 WL 2015526, at *2–3 (finding that the plaintiff's charge and rebuttal were admissible as admissions of a party opponent under Rule 801(d)(2) and then "consider[ing] whether the Charge and Rebuttal, though admissible, should nonetheless be excluded pursuant to [Rule] 403").

17

###### B.      *Motion to Exclude Evidence of Zinman Case*

Finally, Vantage moves to exclude evidence of a separate employment discrimination case, the *Zinman* case, which was settled shortly before Gavurnik's March 2017 interview with Peter Murphy.  (Doc. No. 68.)  Vantage argues that the prejudicial effect of allowing Gavurnik to introduce the complaint, jury demand, and docket sheet from the *Zinman* case outweighs the minimal probative value, especially as the *Zinman* case was against Vantage Learning (a separate entity) and Peter Murphy, not Vantage Labs (the Defendant here), and that questions or documents about the *Zinman* case should be excluded under Rule 403.  (*Id.*)  Gavurnik opposes the motion, arguing that the fact that Vantage Learning and Peter Murphy settled the *Zinman* case about a month before Gavurnik's March 24, 2017 interview with Mr. Murphy is highly relevant and "will be offered to show Peter Murphy's motivations for his actions vis-à-vis Gavurnik" and goes to his bias or prejudice.  (Doc. No. 70.)

Vantage Learning and Peter Murphy settled the *Zinman* case on February 23, 2017.  (*See* Doc. No. 64-15 at 8 (*Zinman* docket).)  Under Rule 408, evidence of a settlement is inadmissible to show the validity of the claim.  Fed. R. Evid. 408(a).  Courts have held that this rule "applies equally to settlement agreements between a defendant and a third party."  *Velazquez ex rel. J.A.V. v. UHS of P.R., Inc.*, Civil No. 13-1581 (MEL), 2015 WL 477198, at *1 (P.R. Feb. 5, 2015) (quoting *Portugués-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 63 (1st Cir. 2011)).  Therefore, Gavurnik cannot use evidence of the settlement to show that the earlier lawsuit against Murphy and Vantage Learning was valid.  *See id.* ("It is clear under Rule 408 that evidence that Dr. Cortés offered consideration in exchange for voluntary dismissal of previous lawsuits is not admissible to show that claims in prior lawsuits against him are valid.").  However, the court may admit evidence of a settlement "for another purpose, such as proving a

witness's bias or prejudice." Fed. R. Evid. 408(b).

Here, to the extent that Peter Murphy testifies at trial,[14] the *Zinman* matter is relevant to show his bias and state of mind—in other words, he was biased against Gavurnik for having filed a lawsuit against his prior employer because Peter Murphy had been sued by a former employee for employment discrimination in the *Zinman* matter and settled that case only one month before interviewing Gavurnik.

The Court concludes that the parties may introduce evidence that the *Zinman* case was settled on February 23, 2017 to show Peter Murphy's bias or motive.[15]  Therefore, Gavurnik may elicit testimony concerning the timing of the settlement, the nature of the suit, and Peter Murphy's state of mind or thoughts on the settlement.  However, the Court will not permit Gavurnik to introduce evidence of the docket sheet, complaint, or jury demand because these documents have such minimal probative value, so the risk of unfair prejudice would substantially outweigh any probative value these documents would provide and therefore are excluded under Rule 403.  In addition, the Court will give the jury a limiting instruction that evidence of the fact that Peter Murphy entered into a settlement in February 2017 with the plaintiff in *Zinman* cannot be considered with respect to whether that claim was valid.  For these reasons, Vantage's motion *in limine* is granted in part and denied in part.

### III.    Conclusion

For the foregoing reasons, the Court grants Gavurnik's motions *in limine* and grants in

---

[14] The fact that the defendants in this case and the *Zinman* matter are not identical is not dispositive, as Peter Murphy was a defendant in *Zinman*, is the founder of both Vantage Labs and Vantage Learning, and a key witness in this case—and his credibility is also key.

[15] In addition, the Court finds that, under Rule 403, the prejudicial effect of the fact the *Zinman* matter settled does not outweigh its probative value.  Fed. R. Evid. 403.

part and denies in part Vantage's motions *in limine*.

An appropriate Order follows.